HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TRAVELERS INDEMNITY COMPANY,

    Plaintiff,

v.

REALVEST CORPORATION, et al.,

    Defendants.

CASE NO. 3:09-cv-05369 RBL

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

[Dkt. # 34]

THIS MATTER is before the Court on Plaintiff Travelers' Motion for Summary Judgment [Dkt. #34]. The case is apparently the last installment of a series of litigation involving a defective condominium project known as Orchard Hills. Travelers provided excess insurance coverage to the Defendants,[1] who are generally the project's developers. In the underlying lawsuit, the Orchard Hills Owner's Association sued the developers in Oregon state court, asserting claims for negligence, breach of fiduciary duty, negligent misrepresentation, violations

---

[1] The Defendants in this declaratory judgment action are the developers and related entities: Realvest Corporation, Orchard Hills LLC, Tualatin Property Investors, Ltd., the Paul Christensen, Robin Bradford, and Gregory Daniels.
    The Association of Unit Owners of Orchard Hill Condominium is also a defendant. However, the coverage issues presented relate only to Traveler's obligations to defend and indemnify Mr. Daniels.

of the Oregon Condominium Act, breach of contract, breach of warranties, and unlawful trade practices. *See Ass'n of Unit Owners of Orchard Hill Condos. v. Realvest, et al*, No. 07-CV-5985 (Or. Cir. Ct.). The underlying state court litigation was resolved by a global, complex settlement involving a variety of other, primary insurers. Travelers did not participate, claiming that Daniels was not an insured under its policy for the claims asserted against him, that its policy was not triggered in any event, and that it had no duty to defend or indemnify Mr. Daniels.[2]

The details of the underlying settlement are not important, but it appears that the settling insurers called part of their payments a "loan" to the Defendants, so that they could be repaid if and to the extent the Defendants prevailed on their claim against Travelers for additional coverage.

The issue in this Motion is whether Traveler's policy obligated it to defend and indemnify one Defendant, Gregory Daniels, who was involved[3] in several of the corporate defendant entities and in the project's development. The Association sued Daniels only for breaching his fiduciary duty to it as a member of its Board.

Travelers argues that it did not insure Daniels against the claims made against him, and seeks a Declaration as a matter of law that it had no duty to defend or indemnify Daniels. Defendants argue that Daniels was a named insured covered by the Travelers policy and that

---

[2] Travelers' Motion also seeks a Declaration that it was not required to provide coverage to any Defendant [Dkt. # 34, at 2] but no party addresses any potential coverage for any of the Association's claims against any other Defendant.

[3] Daniels was an employee of Mortgage Investments, Inc., which was in turn a division of Defendant Realvest, during the project's initial construction and during its conversion to a condominium. Daniels was also a five percent owner of Realvest during the construction and conversion process.
In response to Travelers' requests for admission, the Association admitted it was pursuing only claims for coverage on Daniels' behalf against Travelers. [Dkt. #35, Ex. A at 2]

1  Travelers had a duty to defend and indemnify Daniels against the claims[4] the Association
2  asserted against him.
3      Because Travelers' position is correct, the Motion for Summary Judgment is GRANTED.

## I.     FACTUAL SUMMARY

Realvest and Tualatin Property Investors[5] hired the Russell Corporation, a general contractor, to construct what was then known as the Orchard Hill Apartments between 1994 and 1996, in Washington County, Oregon.  Mr. Daniels, as Realvest's president, oversaw much of the work.  In August 1996, Everett Foster, the project manager, inspected the property and issued a report detailing serious construction defects, including water intrusion and dry rot.  Foster gave the report to Daniels, who apparently took no action.

In 1998, Daniels coordinated with property inspectors, lawyers, and marketing specialists to convert the Orchard Hill Apartments to condominiums.  On February 10, 1999, Realvest and Orchard Hills LLC[6] incorporated the Orchard Hill Owner's Association.  Daniels served as the Association's initial director during the conversion process, and, along with Christensen and Bradford, served on the Association's first Board of Directors.  Daniels remained a board member until approximately January 2, 2002.

---

[4]    Defendants claim that, with respect to the claims against Daniels, Travelers was obligated to "drop down" and defend him in the first instance, without regard to whether or not any underlying primary insurance policies were exhausted.  Because the threshold question—Daniels' status as an insured—is answered in the negative, the Court does not address Defendants' second argument that exhaustion of a primary policy was not required to trigger Travelers' duty to defend.

[5]  Realvest is a general partner of Tualatin Property Investors, which owned the apartments.

[6]  Realvest is also the sole member of Orchard Hills, LLC.

In 1999, Travelers' predecessor, Gulf Insurance Company, issued Realvest a Commercial Excess (Umbrella) Liability insurance policy. [Dkt. # 36, Ex.1]  Daniels was a named insured under the policy. The policy defines an "insured" as an individual designated in the policy, but the policy has two limitations—it covers only business conduct, and it covers only businesses of which the named insured is the sole owner:

> **Section II – Who Is an Insured**
> 1. If you are designated in the Declarations as:
>     a. An individual, you and your spouse are insureds, *but only with respect to the conduct of a business of which you are the sole owner*.

[Dkt. # 35, Ex. 1 at 1-005]. The policy's Declarations section does designate Daniels as an individual insured.

In 2007, the Association discovered structural impairments and dry rot in the condominiums—the same defects and damage identified in Everett Foster's earlier report. The Association sued, claiming in relevant part that Daniels had breached his fiduciary duty to the Association as a developer and board member by failing to disclose the defects.

In 2009, the Association and developer Defendants settled for $4,100,000.[7]  Several insurance companies (National Surety Corporation, Mid-Century Insurance Company, Truck Insurance Company, and State Farm Fire and Casualty Company) participated in the settlement,

---

[7] Under the settlement agreement, each developer Defendant paid the Association the following amounts to settle the claims against it: Daniels - $2,180,000 (breach of fiduciary duty), Christensen - $1,000,000 (breach of fiduciary duty), Realvest - $500,000 (negligence), Orchard Hills LLC - $160,000 (negligence and breach of contract), Tualatin Property Investors - $160,000 (negligence), and Russell Corporation - $100,000 (negligence, breach of contract, indemnity, and contribution).
The insurance companies agreed to "loan" $3,200,000 to Daniels, Christensen, and Realvest, allowing them to settle the Association's claims, and to be repaid with the proceeds of the Defendants' claims against Travelers. The other payments were apparently made without recourse.

but Travelers did not. Instead, it filed this declaratory judgment action, arguing that it owed no duty to defend or indemnify the developer Defendants, specifically Daniels.

## II.     DISCUSSION

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1221.

The Court's task in interpreting an insurance contract is well-settled: it looks to the whole contract, giving it a fair, reasonable, and sensible construction. *Holden v. Farmers Ins. Co.*, 169 Wn. 2d 750, 755-56 (2010). Washington law provides that an "[i]nsurance contract should be given a practical and reasonable, rather than a literal, interpretation, and should not be given a construction which would lead to an absurd conclusion or render the policy nonsensical or ineffective." *Wash. Pub. Util. Dists.' Utils. Sys. v. Pub. Util. Dist. No. 1 of Clallam Cnty.*, 112 Wn. 2d 1, 11 (1989). Put another way, a court "may not give an insurance contract a strained or forced construction which would lead to an extension or restriction of the policy beyond what is

fairly within its terms." *McAllister v. Agora Syndicate, Inc.,* 103 Wn. App. 106, 109 (2000) (quoting *Tewell, Thorpe, & Findlay, Inc. v. Cont'l Cas. Co.*, 64 Wn. App. 571, 576 (1992)). The rule that ambiguous contract language is to be construed in favor of the insured and most strongly against the insurer should not be permitted to have the effect of making a plain agreement ambiguous. *McAllister*, 103 Wn. App. at 110 (citing *West Am. Ins. Co. v. State Farm Mut. Auto. Ins. Co.,* 80 Wn. 2d 38, 44 (1971)).

**A. The named insured provision is not ambiguous.**

Travelers primarily argues that it owes Daniels no duty to defend under its excess policy because it insured Daniels *only with respect to the conduct of a business of which [he was] the sole owner,* and the evidence is undisputed that Daniels was not at any time the sole owner of any of the defendant developer businesses or of the Association.

The developer Defendants argue that the provision at issue is ambiguous, and Travelers' interpretation of Section II is an inappropriately broad application of a narrow exclusion. They emphasize that, in the underlying action, the Association sued Daniels personally, not as an owner, manager, member, shareholder, or employee of any entity. They argue that Daniels was individually covered, and that the "business conduct exclusion" does not apply to personal claims that are business related.

The provision at issue is not ambiguous. Travelers correctly cites a series of cases for the proposition that policy language purporting to insure individuals "only with respect to conduct of a business of which that individual is the sole owner" means exactly what it says. Individuals sued for conduct arising out of their operation of businesses of which they are not the sole owner are not covered under these policies. *See*, for example, *Dome v. Kennard*, 172 F.3d 1278 (10th Cir. 1999), and others cited at Dkt. #40 p. 3.

On the other hand, Defendants cite no cases suggesting, much less holding, that the import of this policy language can be avoided through some alternate, reasonable interpretation of it. The primary case upon which they rely *Willing v. Community Association Underwriters of America, Inc.*, 2007 WL1991038 (W.D. Wash.) did not so hold. Indeed, the policy there "provided coverage for the condominium and the Association's directors and executive officers ***only with respect to their duties as such***." *Willing* at *1 (emphasis added). In other words, the policy at issue in *Willing* did provide coverage for claims against the individuals, so long as the claims related to their duties in connection with (or respect to) the Association.

This language is fundamentally different than the language at issue in this case. Here, the coverage grant[8] has an entirely different limitation. It provides coverage to the named individual insureds *only* to the extent they are being sued with respect to the conduct of a business "of which [they are] the sole owner." Daniels was not the sole owner of any business involved in this litigation not Realvest, and not the Association. He is not covered under the Travelers excess policy as a matter of law.

Because Daniels is not an insured under the policy, no other provision is triggered. Therefore, the Court need not address Travelers' or Realvest's other arguments. Plaintiff's Motion for Summary Judgment is **GRANTED.** Travelers had not duty to defend or indemnify

---

[8] The policy language is not an exclusion (though such a determination would not alter the Court's conclusion). It is instead an unambiguous provision defining the scope of 'Who is an Insured' (and under what conditions) under the policy.

1 | Daniels on the claims the Association asserted against him. The clerk is instructed to enter
2 | judgment in Plaintiff Travelers' favor.
3 |     IT IS SO ORDERED.
4 |     Dated this 6th day of November, 2012.

*[Signature: Ronald B. Leighton]*

Ronald B. Leighton
United States District Judge